UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUI MOURA, an individual,

          Plaintiff,

    v.

PERSONAL BUSINESS ADVISORS
LLC, a Florida limited liability company;
FIRST MEDIA CLUB, a corporation
organized under the laws of Germany;
UWE BRETTMANN, an individual;
AXEL ZACHARIAS, an individual; and
JUDITH GROTE, an individual,

          Defendants.

CASE NO. C08-5403BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS, STAY PENDING
ARBITRATION, OR
TRANSFER VENUE

This matter comes before the Court on Defendants' Motion to Dismiss, Stay

Pending Arbitration, or Transfer Venue (Dkt. 5). The Court has considered the pleadings

filed in support of and in opposition to the motion and the remainder of the file and

hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On May 20, 2008, Plaintiff Rui Moura filed a complaint in the Pierce County

Superior Court for the State of Washington against Defendants Personal Business

Advisors LLC, First Media Club, Uwe Brettmann, Axel Zacharias, and Judith Grote.

Dkt. 1 at 9-18 ("Complaint"). Plaintiff alleges violations of the Washington Franchise

Investment Protection Act, RCW 19.100.010-100.940, the Washington Consumer

Protection Act, 19.86.010-86.920, Detrimental Reliance, and Unjust Enrichment. *Id*. ¶¶

28-62. On June 25, 2008, the action was removed to this Court. Dkt. 1.

On July 2, 2008, Defendants filed a Motion to Dismiss, Stay Pending Arbitration,

or Transfer Venue. Dkt. 5. On July 28, 2008, Plaintiff responded. Dkt. 8. On August 1,

2008, Defendants replied. Dkt. 12.

## II. FACTUAL BACKGROUND

In the spring of 2006, Plaintiff alleges that he submitted his phone number to

Defendant Personal Business Advisors through its website. Dkt. 9, Declaration of Rui

Moura ("Moura Decl."), ¶ 2. Shortly thereafter, Plaintiff claims that one of Defendant's

representatives contacted Plaintiff regrading "various franchise and business

opportunities," including the possibility of owning rights in the 3aART system. *Id*.

Between May and October of 2006, Plaintiff claims that he negotiated the business

opportunity with the Chairman and CEO of Defendant Personal Business Advisors, Uwe

Brettmann. *Id*. ¶ 3. It is uncontested that Plaintiff used his home phone for those

negotiations. *Id*. Plaintiff alleges that Defendant Brettmann, as well as Defendant Axel

Zacharias, made several misrepresentations regarding the 3aART business. *Id*. ¶ 4.

Defendant Brettmann claims that Plaintiff traveled with him and Defendant Zacharais to

both Germany and Nevada to familiarize Plaintiff with the 3aART business. Dkt. 7,

Declaration of Uwe Brettmann, ¶¶ 4-6.

In October of 2006, Plaintiff entered into a "Master Licensing Agreement" with

Defendant Brettmann and Defendant Zacharias in which Plaintiff would be the "Master

Licensee" of the 3aART system. Dkt. 7 at 8-41 ("Agreement"). Before entering into the

Agreement, Plaintiff established Nova Arts International, LLC ("Nova"), which is a

limited liability company incorporated under the laws of Nevada. *See* Dkt. 7 at 42-43

(Nova's operating agreement). Nova's principal place of business was listed as Plaintiff's

home residence, 6901 92nd Street Ct. NW, Gig Harbor, Washington 98332. *Id.* It is uncontested that the Agreement was executed in Texas.

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Personal Business Advisors and Uwe Brettmann move the Court to dismiss them from this action because the Court lacks personal jurisdiction over them. Dkt. 5 at 9. When a defendant presents this defense, the plaintiff bears the burden of demonstrating that personal jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the motion is based on the pleadings, the plaintiff must only make a prima facie showing of jurisdictional facts. *Id.*

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A). Washington's long-arm statute states that a party submits to the jurisdiction of the Washington courts by "[t]he transaction of any business within this state." RCW 4.28.185(1). Any assertion of jurisdiction, however, must comport not only with that statute but also the due process clause of the United States Constitution. *See Deutsch v. West Coast Machinery Co.*, 80 Wn.2d 707, 711 (1972). The Washington Supreme Court has set forth a three-part test to determine whether a court should assert jurisdiction which is as follows:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Id.* (citations omitted).

Because Defendants concede the second part of this test, Dkt. 12 at 6, n.10, the Court will only discuss the remaining prongs.

ORDER - 3

### 1. Purposeful Availment

The focus of the purposeful availment inquiry is on the defendant's activities in the forum. *John Does v. CompCare Inc.*, 52 Wn. App. 688, 697 (1988), *review denied*, 112 Wn.2d 1005 (1989). The sufficiency of the contacts is determined by the quality and nature of the defendant's activities, not the number of acts or mechanical standards. *Walker v. Bonney-Watson Co.*, 64 Wn. App. 27, 34 (1992). "Initiating contact for the purpose of establishing a business relationship is the first step in submitting to the jurisdiction of the state." *Byron Nelson Co. v. Orchard Management Corp.*, 95 Wn. App. 462, 465 (1999). But who first contacted whom is less important than the resulting commercial connection. *Kysar v. Lambert*, 76 Wn. App. 470, 488-89, *review denied*, 126 Wn.2d 1019 (1995).

Although Plaintiff may have initiated the contact between the parties in this action, Defendants' subsequent actions, as alleged by Plaintiff, overcome Defendants' argument that they are merely out-of-state participants in a joint venture. It is contested that Plaintiff submitted his phone number to Defendants through Defendants' website. Sometime after that event, Plaintiff alleges that Defendants actively pursued him by:

> (a) telephoning [Plaintiff] at his home in Gig Harbor, Washington; (b) soliciting his investment and participation in the Franchise; (c) providing him with marketing materials that promoted the Franchise; and (d) systematically placing to his Washington (253) number approximately 50 to 60 phone calls over the course of six months to negotiate with him about acquiring the Franchise. These purposeful negotiations ultimately led to, and were conduct [sic] with the full knowledge that, the Franchise's place of business would be Washington and that its CEO (and a principal investor) would be a resident of Gig Harbor, WA. That understanding was memorialized in the Master License (Franchise) Agreement where it states in paragraph 1 of the agreement that [the business] would have its principal office at 6901 92nd Street Ct. NW, Gig Harbor, WA 98332. [Defendant] Brettman [sic] even agreed to invest $300,000 in a business whose principal place of business would be in Washington, and to lend the business his knowledge of managing a nationwide franchise.

Dkt. 8 at 8 (Plaintiff refers to the business a "Franchise" whereas Defendants consider it a joint venture). If Plaintiff's allegations are taken as true, as they must be for this preliminary motion, then Defendants' activities in the forum show that they knowingly

reached into Washington in an effort to consummate a transaction with a Washington resident.

Defendants, however, claim that Plaintiff's declaration and alleged facts in support of jurisdiction are materially false and contain multiple unsupported allegations. Dkt. 12 at 2. Defendants cite no authority for the proposition that Plaintiff can be impeached based on the pleadings of a Rule 12(b)(2) motion. In fact, when considering this motion, the Court must accept Plaintiff's allegations as true and resolve any controversies in favor of the Plaintiff. *See Schwarzenegger*, 374 F.3d at 800. Defendants' arguments are therefore unavailing.

Next, Defendants argue that "[t]he only 'contacts' [Plaintiff] alleges are sparse conversations and emails which were all incidental to [Plaintiff's] solicitation." Dkt. 12 at 8. Those contacts, however, evolved into a complicated business transaction and created an entity whose principal place of business was Gig Harbor, Washington. Moreover, Defendant Brettmann invested $300,000 in a business that would be operated from this state. It can hardly be said that these contacts were merely incidental to Plaintiff's submission of his phone number to Defendants via their website.

Therefore, Plaintiff has shown that Defendants have sufficient contacts with the State of Washington to purposely avail themselves to this forum.

### 2.      Traditional Notions of Fair Play and Substantial Justice

If the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). The court should consider the following seven factors when making this determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Defendants devote a sentence to each factor. Dkt. 5 at 14. Although this can hardly be said to be a compelling case against this Court's exercise of jurisdiction, Defendants' main contention is that the parties agreed to resolve their disputes in Nevada and that Nevada is "conveniently located approximately" half-way between the parties' current residences. Dkt. 12 at 8-9. Requiring the Defendants to litigate in this forum is not constitutionally unreasonable "[i]n this era of fax machines and discount air travel." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

In summary, Plaintiff has shown that Defendants made sufficient contacts in Washington and Defendants have failed to make a compelling case against this Court's exercise of personal jurisdiction over them. Therefore, the Court denies Defendants' motion to dismiss them from this action for lack of personal jurisdiction.

**B.      Stay Pending Arbitration**

Defendants move the Court for a stay of this action pending arbitration in accordance with the arbitration provision of the Agreement. Dkt. 5 at 14. Under Section 3 of the federal Arbitration Act, if "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. In this case, the arbitration clause provides as follows:

> every claim or dispute arising out of or relating to the negotiation, performance or non-performance of this Agreement, including, without limitation, any alleged torts, and specifically including any claims regarding the validity, scope, and enforceability of this Section shall be determined by arbitration . . . .

Agreement, Exh. B.

1    The question before the Court is whether Plaintiff, in his personal capacity, agreed

2    to the arbitration provision in the Agreement. Plaintiff concedes that he signed the

3    Agreement in his personal capacity only as to the financial guarantee of $300,000. Dkt. 8

4    at 11. Plaintiff contends that this was the limit of his personal involvement and, therefore,

5    his individual claims against Defendants are not subject to the arbitration provision in the

6    Agreement. *Id.* at 12-13. Defendants counter that Plaintiff is "grasping at straws in an

7    effort to get out from under a personal obligation to arbitrate . . . ." Dkt. 12 at 10.

8    Neither party has provided the Court with any binding authority on this issue under the

9    federal Arbitration Act and the Court is unaware of any such Ninth Circuit authority.

10   Plaintiff basis his argument on contract interpretation law and Black's Law Dictionary.

11   *See* Dkt. 8 at 11-13. On the other hand, Defendants rely upon a Supreme Court holding

12   that, under the Arbitration Act, there is a presumption in favor of arbitration. *See* Dkt. 12

13   at 9 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626

14   (1985) ("as with any other contract, the parties' intentions control, but those intentions are

15   generously construed as to issues of arbitrability")).

16   It is uncontested that Plaintiff signed the Agreement both in his individual capacity

17   and as CEO of Licensee NEWCO, LLC.[1] *See* Agreement. Plaintiff's contention that he

18   did not agree to certain provisions of that Agreement is essentially a contention regarding

19   the "scope" of Plaintiff's intention to be bound by the provisions of the agreement.

20   Moreover, all of Plaintiff's claims relate to the negotiation of the Agreement. *See*

21   Complaint. The parties to the Agreement intended to submit to arbitration both claims

22   arising out of or relating to the negotiation of the Agreement and claims regarding the

23   scope of the arbitration clause. *See* Agreement, Exh. B. With the presumption being in

24   favor of arbitration, Plaintiff has failed to show that the scope of his personal intention, as

25   _____

26      [1] Although the Agreement repeatedly refers to Nova as the licensee and Plaintiff
     concedes he "agreed on behalf of Nova as its CEO," Dkt. 8 at 13, the signature block clearly
27   states that "NEWCO LLC" is the licensee. The Court will not consider this discrepancy because
     the main question before the Court is Plaintiff's personal involvement under the Agreement.
28

well as the claims in his complaint, fall outside of the arbitration provision of the Agreement.

Therefore, Defendants' motion to stay this action pending arbitration is granted.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, Stay Pending Arbitration, or Transfer Venue (Dkt. 5) is **GRANTED in part** and **DENIED in part** as follows:

(1) Defendants' motion to dismiss them from this action for lack of personal jurisdiction is **DENIED**;

(2) Defendants' motion to stay this action pending arbitration is **GRANTED**, this action is stayed until further order of the Court, and the parties shall update the Court on the status of the stay no later than February 1, 2009; and

(3) Defendants' motion to transfer venue is **DENIED** as moot.

DATED this 2nd of September, 2008.

BENJAMIN H. SETTLE
United States District Judge